UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

ANGELA LITTON, *as wife of Larry Litton, Jr. and* )
*as Co-Administrator of the Estate of Larry Litton,* )
*Jr., deceased*, and TILISA LITTON, *as mother of* )
*Larry Litton, Jr. and as Co-Administrator of the* )
*Estate of Larry Litton, Jr., deceased*, )
                               )
                       *Plaintiffs*, )
                               )
                     v. )          No. 4:20-cv-00251-JMS-KMB
                               )
NAVIEN, INC. and JOHNSTONE SUPPLY, INC., )
                               )
                     *Defendants*. )

## ORDER

     Plaintiffs Angela Litton, as the wife of Larry Litton, Jr. ("Sgt. Litton") and the Co-Administrator of his Estate, and Tilisa Litton, as the mother of Sgt. Litton and the Co-Administrator of his Estate, initiated this litigation against Defendants Navien, Inc. ("Navien") and Johnstone Supply, Inc. ("Johnstone")[1] asserting claims under the Indiana Products Liability Act ("IPLA"), Ind. Code § 34-20-1-1 to -9-1, related to the death of Sgt. Litton on December 19, 2019. [Filing No. 64.]  Defendants have filed a Motion for Summary Judgment, [Filing No. 132], and a Motion to Exclude, [Filing No. 149], which are both ripe for the Court's review.

### I.
### SUMMARY JUDGMENT STANDARD

     A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment

---

[1] Plaintiffs' claims previously asserted against Defendant Comfort Home Services, Inc. have been dismissed with prejudice.  [Filing No. 107.]

as a matter of law.  *See* Fed. R. Civ. P. 56(a).  On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events.  *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003).  "'Summary judgment is not a time to be coy.'"  *King v. Ford Motor Co.*, 872 F.3d 833, 840 (7th Cir. 2017) (quoting *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017)).  Rather, at the summary judgment stage, "[t]he parties are required to put their evidentiary cards on the table."  *Sommerfield*, 863 F.3d at 649.

The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party.  *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009).  The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008).  It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder.  *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

Each fact asserted in support of or in opposition to a motion for summary judgment must be supported by "a citation to a discovery response, a deposition, an affidavit, or other admissible evidence."  S.D. Ind. L.R. 56-1(e).  And each "citation must refer to a page or paragraph number or otherwise similarly specify where the relevant information can be found in the supporting evidence."  *Id.*  The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant.  *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 572–73 (7th Cir. 2017) (quotations omitted); *see also* Fed. R. Civ. P. 56(c)(3); S.D. Ind. L.R. 56-1(h).  Where a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the Court may consider the fact undisputed for purposes of the summary judgment motion.  Fed. R. Civ. P. 56(e)(2).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision.  A disputed fact is material if it might affect the outcome of the suit under the governing law.  *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009).  In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative.  *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005).  Fact disputes that are irrelevant to the legal question will not be considered.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II.
### STATEMENT OF FACTS[2]

The following factual background is set forth pursuant to the standard detailed above.  The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made."  *Premcor USA, Inc. v. Am. Home Assurance Co.*, 400 F.3d 523, 526–27 (7th Cir. 2005).

### A.      The December 7, 2019 Incident

On December 7, 2019, Indiana National Guard Sergeant Larry Litton was found dead inside a shower trailer while on duty at the North Vernon Airport-COP Panther Army detachment base in Jennings County, Indiana (the "Base").  [Filing No. 64 at 1–3; Filing 134-1 at 5, 33]   A medical examination determined Carbon Monoxide ("CO") poisoning to be the cause of his death.

---

[2] At the outset, the Court notes that both Plaintiffs and Defendants failed to comply with this Court's Practices and Procedures for citing to record evidence in its initial brief.  The Practices and Procedures require that exhibits be filed before briefs and direct the parties to "cite to the docket number, the attachment number (if any), and the applicable .pdf page as it appears on the docket information located at the top of the filed document."  [Filing No. 6 at 4.]  Neither party's citations follow this format and instead identify exhibits by letter-identifier determined by the party.  Failure to follow the proper citation conventions has made the Court's review of the evidence unnecessarily difficult and cumbersome.

[Filing No. 134-1 at 33.]  Roger Griffith, a licensed engineer, was retained by the Indiana Army National Guard to examine the source of the CO that resulted in the death of Sgt. Litton.  [Filing No. 134-4 at 2.]  Mr. Griffith determined that the water heaters installed in the shower trailer were the source of CO that resulted in Sgt. Litton's death, that "improper installation of the water heaters was the root cause of the elevated [CO] levels in the shower trailer," and that "the water heater installation was improper and dangerous, resulting in extremely high CO levels throughout the shower trailer."  [Filing No. 134-4 at 3.]

The water heaters in the trailer were manufactured by Navien on July 16, 2015 and had model designation NPE-240S.  [Filing 133 at 1, 4.]  The water heaters were sold to Johnstone on August 28, 2015.  [Filing No. 134-4 at 4.]  Johnstone then sold the units to J.R. Balson, Inc., from whom the water heaters were purchased by the Department of Defense for the Base on September 17, 2015.  [Filing No. 134-4 at 4–5.]  The water heaters were packaged with the capability to run with natural gas fuel, however, after a necessary conversion process, the water heaters could run with propane gas instead.  [Filing No. 138-1 at 2.]

Stephen Ramey, a maintenance repairman employed at the Base, later installed the water heaters in the shower trailer.  [Filing 134-7 at 6, 15.]  Mr. Ramey holds no plumbing license or any other related professional licenses.  [Filing 134-7 at 11.]  Mr. Ramey testified that he read through the water heaters' installation manual before installing the water heaters.  [Filing No. 134-7 at 13.]  However, Mr. Ramey did not perform the propane conversion detailed in the installation manual because he believed the instructions "wouldn't apply to [him]" despite being aware that the Base used only propane fuel.  [Filing 134-7 at 14, 16.]

On October 17, 2019, prior to Sgt. Litton's death, another soldier was hospitalized with CO poisoning after using the same shower trailer as Sgt. Litton.  [Filing No. 134-1 at 5.]   An

investigation conducted by the military did not uncover the source of CO in the shower trailer at that time.  [Filing No. 134-1 at 5.]  During the course of this investigation, Indiana National Guard investigators did not turn on the showers.  [Filing No. 134-3 at 7.]

**B.      Navien's Instructions and Warnings**

*1.   Content of Warnings*

Navien presented warnings regarding use of the water heaters in two places: on the ratings plate attached to each water heater, and within the installation manual provided with the water heater.  [Filing No. 134-9.]  The ratings plate was located on the exterior side of the water heaters and stated to users that the water heater's "type of gas" was "NG" (natural gas).  [Filing No. 134-9 at 14.]  The ratings plate also indicated that "[o]rifices necessary for [propane] conversion are provided" and "[f]ailure to use the correct gas can cause problems which can result in death, serious injury or property damage."  [Filing No. 134-9 at 14.]  The ratings plate also instructs users to "**[c]onsult your installation manual for more information**," and that "[t]his appliance must be installed in accordance with local codes, or in the absence of local codes, the National Fuel Gas Code, ANSI Z223.1/NFPA 54 or the CSA B149.1."  [Filing No. 134-9 at 14 (emphasis in original).]

The ratings plate is also replicated in the water heater's installation manual on page 12.  [Filing No. 134-9 at 14.]  The installation manual further instructs users to, "**[b]efore starting the installation,** check the rating plate . . . to ensure that the water heater matches the gas type . . . available in the installation location."  [Filing No. 134-9 at 14 (emphasis in original).]  The manual then states, "**[i]f the water heater does not match each of these ratings, do not install the water heater**," and, "if conversion to Propane gas is required, the included gas conversion kit must be

5

used."  [Filing No. 134-9 at 14 (emphasis in original).]  On the same page, the following warning is included:

> ⚠ **WARNING**
>
> • Be sure the gas type and electricity voltage match the rating plate. Using a different gas type will cause abnormal combustion and water heater malfunction.
>
> • Using abnormally high or low AC voltage may cause abnormal operation, and may reduce the life expectancy of this product.

[Filing No. 134-9 at 14.]

The necessity of conversion procedures when propane gas is to be used as fuel for the water heaters is mentioned or explained in the installation manual in the following locations:

1) The installation cover page, similar to the ratings plate, contains the statement that "**[t]he installation must conform with local codes or, in the absence of local codes, the National Fuel Gas Code, ANSI Z223.1/NFPA 54 and/or CSA B149.1, Natural Gas and Propane Installation Code.**"  [Filing No. 134-9 at 3. (emphasis in original).]

2) On page 5, a "Conversion Kit" is listed and depicted as an item included in the water heater packaging.  [Filing No. 134-7 at 7.]

3) Page 15 contains the instructions for connecting the gas supply along with the following warning:

 **WARNING**

- Before connecting the gas supply, determine the gas type and pressure for the water heater by referring to the rating plate. Use only the same gas type indicated on the rating plate. Using a different gas type will result in abnormal combustion and malfunction of the water heater. Gas supplies should be connected by a licensed professional only.

- The appliance and its gas connection must be leak tested before placing the appliance in operation.

- This water heater cannot be converted from natural gas to propane or vice versa without a Navien gas conversion kit. Do not attempt a field conversion of this water heater without a Navien gas conversion kit. Doing so will result in dangerous operating conditions and will void the warranty.

[Filing No. 134-7 at 17.]

4) Appendix 5.1 contains instructions for gas conversion beginning on page 38. [Filing No. 134-7 at 40.]  This appendix includes the following warning:

 **WARNING**

This conversion kit shall be installed by a qualified service agency* in accordance with Navien's instructions and all applicable codes and requirements of the authority having jurisdiction. The information in these instructions must be followed to minimize the risk of fire or explosion or to prevent property damage, personal injury or death. The qualified service agency is responsible for the proper installation of this kit. The installation is not proper and complete until the operation of the converted appliance is checked as specified in the manufacturer's instructions supplied with the kit.

[Filing No. 134-7.]  The gas conversion appendix contains several other warnings communicating various dangers which may arise from failure to follow the individual steps of the conversion process.  [Filing No. 134-7 at 41–44.]

### 2.  Plaintiffs' Expert Report

Dr. James Miller, a Professor Emeritus of Engineering at the University of Michigan and Principal of Miller Engineering, produced a report assessing the adequacy of the warnings on Navien's packaging.  [Filing No. 138-1.]  Dr. Miller opined the following:

> 1. With only a convertible tankless water heater offered by Navien, the likely probability of an installer overlooking the conversion process necessitates a particular effort on Navien's part to conspicuously bring attention to this possible need for conversion. Navien provided inadequate warnings in this respect.

> 2. The fine print on the small rating plate on the unit which stated "Orifices necessary for LP conversion are provided" is not sufficiently explanatory or conspicuous to an installer in itself. More pointed warning information should have been prominently displayed on: (a) the outer box; (b) the outside front of the unit itself; (c) the first few pages of the manual displaying "Safety Information;" and, preferably, (d) at the point of gas installation on the unit, such as on a tear-off tag.

> 3. Navien was also negligent in not complying with ANSI Z21.10.3 relative to providing a specific warning to indicate the type of gas for which the unit is configured; this is required by ANSI to be "on the outside front of the appliance."

[Filing No. 138-1 at 6.]  Dr. Miller also gave the following deposition testimony:

> Q:    The contents would be the same, just a different location?

> A:    I've gone through the contents and the instructions for making the conversion and so forth, and I think they're really done quite well.

> Q:    So you agree that there was sufficient information in the manuals to instruct the installer about how to properly convert the unit from natural gas to propane; right?

> A:    Yes.

[Filing No. 138-6 at 63–64.]

### 3.  Defendants' Expert Report

Dr. Nathan Dorris, a "human factors specialist (ergonomist)," produced a report evaluating the water heaters' "instructions, warnings and other safety communications." [Filing No. 134-14 at 6.] Dr. Dorris concluded:

> [T]he warnings and instructions provided by Navien with the model NPE-240S condensing water heaters were reasonable, appropriate, and adequate from a human factors perspective. The heaters are neither defective nor unreasonably dangerous for lack of some additional safety communications. As it relates to this matter, the safety messages associated with the subject water heaters consistently convey that:
>
> • there is potential for carbon monoxide poisoning resulting in injury or death;
>
> • proper installation and ventilation is necessary to avoid this risk;
>
> • the subject heaters come configured for use with natural gas;
>
> • the subject heaters can be converted for use with propane gas using the supplied Conversion Kit; and
>
> • installation is to be done by a professional.
>
> The evidence does not support a conclusion that any different or additional warnings provided by Navien would have changed the behavior of Stephen Ramey, or anyone else, as it relates to this incident. Despite Mr. Ramey's testimony that the warnings and instructions were noticed and read, unfortunately they were not followed, as evidenced by his own testimony and the investigation of Robert Griffith.

[Filing No. 134-14 at 40–41.]

## C.    The Lawsuit

This lawsuit was first filed on October 30, 2020 in Jennings County Superior Court, [Filing No. 1 at 1], and was removed to this Court on December 15, 2020, [Filing No. 1 at 1]. Plaintiffs filed a Second Amended Complaint on September 14, 2021 alleging claims against Defendants under the Indiana Products Liability Act. [Filing No. 64.] Defendants moved for summary judgment on November 21, 2022. [Filing No. 132.] After briefing on Defendants' Motion for

Summary Judgment closed, Defendants filed their Motion to Exclude on January 9, 2023. [Filing No. 149.]

### III.
#### PRELIMINARY EVIDENTIARY ISSUES

In their briefs in support of their Motion for Summary Judgment, Defendants objected to four of Plaintiffs' exhibits:  (1) a report by James Miller, Ph.D., an expert retained by Plaintiffs, opining on the incident at issue in this case, [Filing 138-1]; (2) a report by Dr. Miller opining on the CO poisoning deaths of an Ohio family of four on May 2, 2019, [Filing 138-4]; (3) a photo of a label purportedly showing a subsequent remedial measure by Navien, [Filing 138-5]; and (4) a press release from Beausay & Nichols Law Firm dated September 8, 2020 related to the Ohio family's CO poisoning deaths in 2019, [Filing No. 138-11].  The Court addresses each objection below.

### A.        Dr. Miller's Expert Report

Defendants object to the admissibility of Dr. Miller's expert report, [Filing No. 138-1], for the purposes of summary judgment, based on Plaintiffs' failure to timely make required disclosures and to authenticate the report, and because the expert report is inadmissible hearsay.  [Filing No. 142-2].  They also urge the Court to reject the report based on Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–93 (1993).

In their reply in support of their Motion for Summary Judgment, Defendants claim that Plaintiffs failed to disclose Dr. Miller's qualifications, a list of cases in which Dr. Miller testified as an expert, and a statement of compensation as required by Rule 269(a)(2)(B), [Filing No. 142 at 2]. Additionally, they contend that the report is unauthenticated and is inadmissible hearsay. [Filing No. 142 at 3.]

Plaintiffs assert in their surreply that they included the omitted disclosures in supplementation produced in May 2021, that the document is authenticated through the expert's deposition testimony, and that the report is not inadmissible hearsay because the report merely discloses what the testimony of the expert witness would be at trial.  [Filing No. 148 at 4–5.]

First, as Plaintiffs point out, the required disclosures have been completed, and Defendants have had a suitable opportunity to examine the documents and potentially use them at trial.  For this reason, the Court declines to exclude Dr. Miller's expert report on Rule 26 procedural grounds. Second, under Federal Rule of Evidence 901 the proponent of evidence must "produce evidence sufficient to support a finding that the item is what the proponent claims it is."  There is no indication that Dr. Miller's expert report is not what it purports to be.  The Court notes that at trial, plaintiff may be required to authenticate Dr. Miller's expert report, but the Court finds no rule or statute requiring a party to accompany an expert report with an affidavit stating that the document is what it facially appears to be at the summary judgment stage, *contra* D. Neb. Civ. R. 7.1(a)(2)(C) (required affidavit), and does not find any reason to believe that Dr. Miller's expert opinion could not be authenticated at trial.  Last, the report does not constitute inadmissible hearsay.  The Seventh Circuit has noted that, at the summary judgment stage, courts "review only those facts whose substance would be admissible at trial under a form permitted by the Federal Rules of Evidence, although the form produced at summary judgment need not be admissible." *Wragg v. Village of Thornton*, 604 F.3d 464, 466 (7th Cir. 2010); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).  Dr. Miller would be a competent witness to testify regarding his investigation and conclusions.  Even if the report itself is ultimately not admissible, the report functions to disclose the contents of Dr. Miller's trial testimony and the Court will not exclude it on hearsay grounds at the summary judgment stage.

11

Defendants also argue that the opinions in Dr. Miller's expert report are not admissible because they do not comply with Federal Rule of Evidence 702. They state that Dr. Miller's opinion regarding the possibility of confusion because Navien offers only convertible water heaters is based on speculation and that he provides no basis in his report for this opinion. [Filing No. 142 at 6–7.] They further argue that Dr. Miller's remaining opinions are also based on speculation. [Filing No. 142 at 7.]

Plaintiffs argue in response that this opinion is admissible because it is based on Dr. Miller's experience and knowledge of warning labels and instructions. [Filing No. 148 at 4.] Further, they state that any issues Defendants find with Dr. Miller's conclusion can be addressed through cross examination and should not result in exclusion. [Filing No. 148 at 4.]

Federal Rule of Evidence 702 provides that expert testimony is admissible if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. A trial judge "must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue. . . . Many factors will bear on the inquiry. . . ." Daubert, 509 U.S. at 592–93.

The Court has a "gatekeeping obligation" under Rule 702, and "'must engage in a three-step analysis before admitting expert testimony. It must determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony

will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017) (quoting *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010)).  Put another way, the district court must evaluate:  "(1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony." *Gopalratnam*, 877 F.3d at 779 (emphasis omitted).  The Seventh Circuit Court of Appeals "give[s] the district court wide latitude in performing its gate-keeping function and determining both how to measure the reliability of expert testimony and whether the testimony itself is reliable." *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011).

While the parties do not contest Dr. Miller's qualifications and it is not in doubt that his opinions would be relevant to the questions at issue for the jury, the Court cannot find that all of his opinions are reliable. Ultimately, the Court cannot find anything his opinion that the likelihood of confusion is increased because Navien offers only the convertible water heater is based on beyond speculation.  Dr. Miller's report provides no reasoning behind his seemingly illogical statement that Navien increases the likelihood of users omitting the conversion process by manufacturing and selling only convertible water heaters.  The only basis given in the report is that Navien is the only manufacturer of water heaters similar to those at issue in this case that does not offer a single-fuel, non-convertible water heater.  However, it remains unclear how offering products of another type as well could clarify how to use a product to a consumer.  The statement is presented without any valid scientific backing and amounts only to inadmissible speculation.

Dr. Miller other opinions, that the warnings provided on the water heaters are insufficiently conspicuous and that Navien was "negligent for not complying with the ANSI" standard warnings, on the other hand, are well within Dr. Miller's field of education and experience and are properly

backed by scientific methodology.  [Filing No. 138-1 at 6.]  A reasonable juror would more likely understand Dr. Miller's opinion that Navien was "negligent" to mean, not that they are legally liable, but instead that the warnings were insufficient and Navien could have provided better warnings and instructions. Dr. Miller's second and third opinions comply with *Daubert* and Rule 702.

For these reasons, Defendants' objection to Dr. Miller's expert opinion regarding increased probability of error due to only offering convertible water heaters is **SUSTAINED** and the Court will not consider this expert opinion.  Defendants' objection to Dr. Miller's other opinions is **OVERRULED**.

### B.      Dr. Miller's Ohio Case Report

Plaintiffs have put forward another report by Dr. Miller opining on an incident in which a family of four died on May 2, 2019, from CO poisoning involving a Navien water heater of the same model at issue here. [Filing No. 138-4.] Defendants assert that this report should be excluded because it was not timely disclosed, it is not authenticated, it is inadmissible hearsay, and it is irrelevant and any relevance it may have is substantially outweighed by unfair prejudice and confusion of the issues.  [Filing No. 142 at 3.]

Plaintiffs argue that the report is probative of whether issues with the water heaters were foreseeable and whether Navien's warnings were inadequate.  [Filing No. 148 at 6–7.]   They contend that the probative value is not outweighed by unfair prejudice because these deaths occurred before Sgt. Litton died which shows that the failure to properly install the water heaters was a foreseeable issue. [Filing No. 148 at 6.] Plaintiffs argue that because Navien water heaters were improperly installed in the same manner as the water heaters at issue here and such improper

installation resulted in the family's deaths, the report constitutes evidence that the warnings were inadequate.  [Filing No. 148 at 7.]

Federal Rule of Evidence 401 defines relevant evidence as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence" where the fact is of consequence in the action.  Rule 403 then allows courts to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Here, the evidence of the Ohio incident has no relevance to the foreseeability of the failure to properly install the water heaters in this case.  Even if prior, similar events to the incident at issue here have bearing on the question of foreseeability, there is no indication that the Ohio deaths occurred before the installation of the water heaters here.

Further, the Ohio deaths have little relevance to whether the instructions with the water heaters were adequate.  Although misunderstandings by others reading the directions may indicate that the warnings were inadequate, a single instance of failure to follow directions has very little value in making such a determination.  Moreover, there is a substantial likelihood that the evidence would confuse the jury by focusing on how the Ohio family understood the directions, rather than the jury's own interpretation of the warnings guided by expert opinion on the warnings' adequacy.  Additionally, the potential for unfair prejudice against Navien is high given that Dr. Miller's opinion relates to the deaths of an entire family, including children.  This may lead a jury to unfairly seek retribution against Navien for the deaths of non-parties to this case. Because the report has very little relevance and any relevance it may have is substantially outweighed by the potential for unfair prejudice or confusion of the issues, Defendants' objection to Dr. Miller's report on the Ohio case is **SUSTAINED** and the Court will not consider it.

### C.     Photo of Label

Defendants next object to the admissibility of a photo of a yellow tear-off label attached to Navien water heaters that are currently on the market, which Plaintiffs have proffered as proof of Navien's subsequent remedial measure.  [Filing No. 138-5.]  Defendants allege that admission of the photo violates Federal Rule of Evidence 901 because there is no evidence that the label is what it purports to be, and violates Federal Rule of Evidence 407 because, although Plaintiffs suggest the only purpose for the exhibit is to demonstrate feasibility of the subsequent remedial measure, the rule prohibits such admissibility where feasibility is not in issue.  [Filing No. 142 at 3–5.]

Plaintiffs contend that the label was not authenticated because they had not yet received the deposition transcript for Defendants' expert.  [Filing No. 148 at 7–8.]

The Court does not find that the photo cannot be authenticated were the photo to be presented at trial as evidence should the feasibility of subsequent remedial measures be placed in issue.  The photo may function as a demonstrative exhibit, in which case it cannot be questioned that nearly any witness could authenticate the photo. The court will not exclude the exhibit due to lack of authentication at the summary judgment stage.  Moreover, if feasibility of subsequent remedial measure becomes an issue at trial, the exhibit will not violate Rule 407. Defendant's objection is **OVERRULED**.

### D.     Press Release Regarding Ohio Deaths

Finally, Defendants object to a press release regarding the Ohio deaths.  [Filing No. 138-11.]  For the same reasons as discussed above, that Dr. Miller's opinion regarding the Ohio deaths is inadmissible, this evidence is also inadmissible.  It has little relevance, is unfairly prejudicial, and has the potential to confuse the jury.  Defendants' objection to the press release is **SUSTAINED** and the Court will not consider it.

16

**IV.**

**MOTION FOR SUMMARY JUDGMENT**

Plaintiffs assert claims based on negligence, strict liability, and breach of warranty legal theories under the IPLA.  [Filing No. 64 at 2–7.]  Under Indiana Law, the IPLA governs each of these claims.  Ind. Code § 34-20-1-1 ("This article governs all actions that are:  (1) brought by a user or consumer; (2) against a manufacturer or seller; and (3) for physical harm caused by a product; regardless of the substantive legal theory or theories upon which the action is brought."); *Dalton v. Teva North America*, 891 F.3d 687, 691 (7th Cir. 2018).  While "a defective product may give rise to claims under both the [IPLA] and the Uniform Commercial Code ("UCC"), . . . a warranty claim that sounds in tort is "redundant with strict liability claims under the [Act]." *Heritage Operating, L.P. v. Mauck*, 37 N.E.3d 514, 520 (Ind. Ct. App. 2015).  Plaintiffs have only asserted claims under a tort theory.  [Filing No. 64.]  Additionally, the IPLA govern "all product liability actions, whether the theory of liability is negligence or strict liability in tort." *Bayer Corp. v. Leach*, 139 N.E.3d 1127, 1134 (Ind. Ct. App. 2019), vacated, 147 N.E.3d 313 (Ind. 2020) (quoting *Stegemoller v. ACandS, Inc.*, 767 N.E.2d 974, 975 (Ind. 2002)).  Summary judgment is therefore appropriate as to Plaintiff's claims under a breach of warranty tort theory, and Plaintiffs' claims under negligence and strict liability are both governed identically by the IPLA and will not be addressed separately.  Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment as it relates to Plaintiffs' breach of warranty claims.

The IPLA provides for a cause of action for physical harm caused against "a person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to the user's or consumer's property."  Ind. Code § 34-20-2-1.  A product is considered defective under the IPLA "if the seller fails to: (1) properly package or label the product to give reasonable warnings of danger about the product; or

(2) give reasonably complete instructions on proper use of the product; when the seller, by exercising reasonable diligence, could have made such warnings or instructions available." Ind. Code § 34-20-4-2. For summary judgment to be granted, Defendants must show that no reasonable factfinder could find that the warnings and operation instructions for the water heaters were inadequate. The Court addresses the parties' arguments below.

### A.     Adequacy of Warnings

Defendants argue in support of their Motion for Summary Judgment that the warnings provided by Navien on conversion and the instructions on the proper method of doing so were adequate as a matter of law. [Filing No. 133 at 21.] They rely in part on the report produced by Dr. Dorris, who opined that the warnings were adequate and that additional or different warnings would not have changed Mr. Ramey's behavior in installing the water heaters. [Filing No. 133 at 23.] They argue that the undisputed evidence is that Mr. Ramey read all the instructions and so there is no reason to believe that additional warnings would have changed the outcome. [Filing No. 133 at 24.]

Plaintiffs argue in their response that there is a factual dispute over the adequacy of the conversion warnings and the lack of more specific warnings. [Filing No. 137 at 21.] Plaintiffs rely in part on conflicting expert opinions on the sufficiency of the warnings between Dr. Miller and Dr. Dorris. [Filing 137 at 21.] They further argue that testimony that Mr. Ramey read the entire installation manual and holds safety in high regard, rather than demonstrating that Mr. Ramey erred in the installation process, in fact constitutes evidence that the warnings were inadequate. [Filing No. 137 at 23.] They contend that this presents a question for the jury on whether different or additional warnings could have better informed Mr. Ramey of the risks and

dangers involved in installing the water heater.  [Filing No. 137 at 23.]  Plaintiffs contend that a reasonable trier of fact could find that that the warnings were deficient.  [Filing No. 137 at 23.][3]

Defendants reply that no evidence has been adduced to show that the warnings were not reasonable or that any change to the placement, number, or content of the warnings would have prevented this incident.  [Filing No. 142 at 16.]  Defendants also argue that Dr. Miller's deposition testimony that the Navien's instructions was "really done quite well" forecloses any dispute of fact over whether the warnings were adequate.  [Filing No. 142 at 16.]

Under Indiana law, "[t]he adequacy of warnings is classically a question of fact reserved to the trier of fact and, therefore, usually an inappropriate matter for summary judgment." *Jarrell v. Monsanto Co.*, 528 N.E.2d 1158, 1162 (Ind. Ct. App. 1988).  To determine the adequacy of warnings and instructions, courts consider "the adequacy of the factual content, the adequacy of the manner in which that content is expressed, and the adequacy of the method of conveying these expressed facts." *Id.* at 1162–63.  The adequacy of warnings "can be decided as a matter of law when the facts are undisputed and only one inference can be drawn from those facts." *Weigle v. SPX Corp.*, 729 F.3d 724, 731 (7th Cir. 2013).

The Court concludes that there remains a genuine dispute of material fact over whether the warnings and instructions regarding gas conversion provided by Navien were adequate to inform the behavior of the product's users including Mr. Ramey.  A review of the installation manual

---

[3] The Court notes that Defendants have put forward evidence that the installation manual presented adequate warnings regarding the need for proper ventilation for the water heaters, that those warnings and instructions were not heeded, and that the failure to follow proper ventilation measures contributed to Sgt. Litton's death, including expert reports opining such.  Because Plaintiffs did not address Defendants' evidence or arguments regarding ventilation warnings and instructions, the Court finds that Plaintiffs have waived any opposition to Defendants' argument that warnings related to water heater ventilation were adequate and that the failure to follow those warnings contributed to Sgt. Litton's death.  *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument…results in wavier.").

demonstrates to the Court that a reasonable juror could find that the failure to mention the particular dangers of using propane in the water heaters without conversion until page twelve of the manual—with the exception of a non-descript drawing of the conversion kit on page five and a general statement that the installation must be done up to code on the cover page—was not sufficient to reasonably warn users of the relevant dangers. There remains a question for the jury over whether the placement and emphasis put on the warnings was sufficient to alert reasonable users to the danger of failing to convert the water heaters to propane gas.

Further, the fact that there are expert opinions in evidence creates witness credibility questions remain which fall within the province of the jury. First, reasonable factfinders could find credible or reject the testimony of either Dr. Dorris or Dr. Miller. Second, there remains a question over the meaning of Mr. Ramey's testimony that the conversion instructions "didn't apply to him". It could mean that he individually failed to follow what Navien asserts to be known and obvious warnings. Or, it could mean that he held this belief due to warnings insufficient to alert him to the fact that an installer needed to complete all conversion steps before attaching the heater to propane supply. Finally, it may mean something else entirely. The Court will not engage in a witness credibility determination or attempt to interpret ambiguous testimony as that is a question for the jury. While such questions for the jury remain, summary judgment is precluded.

Lastly, Defendants' contention that Dr. Miller's deposition testimony forecloses the issue fails. The question before Dr. Miller referred to the contents of the instructions for conversion and whether there was "sufficient information in the manuals to instruct the installer about how to properly convert the unit from natural gas to propane." [Filing No. 138-6 at 63–64.] A reasonable juror could conclude that the answer cited in Defendants' brief relates specifically to the quality of

the instructions on how conversion is done and is not necessarily a comment on the sufficiency of warnings conveying the dangers of not doing so.

For these reasons, the Court finds that there are genuine issues of material fact on the issue of whether Navien's warnings regarding gas conversion were adequate and the Court **DENIES** Defendants' Motion for Summary Judgment on that issue.

### B.     Misuse Defense

Defendants further contend in support of their Motion for Summary Judgment that there is no genuine issue of material fact on their proffered misuse defense, and they are entitled to summary judgment on this defense.  They assert that the water heaters were misused because the water heaters' installation deviated from the Navien installation manual in ten ways, as discussed by Mr. Griffith in his report.  [Filing No. 133 at 14.]  They argue that they could not have reasonably foreseen the cumulative total of ten installation omissions.  [Filing No. 133 at 20.] Further, Defendants argue that they could not have reasonably foreseen that Mr. Ramey would read the manual and fail to follow the warnings and directions.  [Filing No. 133 at 20.]  Defendants point to *Campbell Hausfeld v. Johnson*, 109 N.E.3d 953 (Ind. 2018), in which the Indiana Supreme Court analyzed whether a seller could have reasonably anticipated a plaintiff's failure to follow three different instructions regarding use of the seller's  product and found that while it may have been reasonable for the seller to foresee failure to follow the instructions in any single way, "it was not reasonably expected for a user to disregard the safety instructions in all three of these ways." *Id.* at 960.

Plaintiffs argue in their response that failure to install the water heaters cannot be considered misuse because a foreseeable use of the water heaters was to heat water for a shower, using propane, which is exactly how the heaters were being used.  [Filing No. 137 at 15.]  They

21

point to *Parry v. Standard Fusee Corporation*, 2021 WL 5882902, at *1 (S.D. Ind. Dec. 13, 2021), in which the court determined that the plaintiff misused a marine distress signal launcher kit by keeping it in her nightstand to fire at potential intruders.  Plaintiffs argue that here, unlike the plaintiff's misuse in *Parry*, the use of the water heaters to heat water for a shower was well within the foreseeable use.  [Filing No. 137 at 15.]  Further, they argue that mis-installation cannot be misuse as such a holding would allow manufacturers to avoid liability in these circumstances, obviating any incentive to provide proper warnings and instructions for use.  [Filing No. 137 at 15.]

Under Indiana law, misuse of a product is a complete defense to liability where there is a showing that "a cause of the physical harm is a misuse of the product by the claimant or any other person not reasonably expected by the seller at the time the seller sold or otherwise conveyed the product to another party."  Ind. Code § 34-20-6-4.  Indiana courts have held that "summary judgment based on misuse is appropriate when the undisputed evidence proves that the plaintiff misused the product in an unforeseeable manner."  *Campbell Hausfeld/Scott Fetzer Co.*, 109 N.E.3d at 959.  Further, "[m]isuse is established as a matter of law when the undisputed evidence proves that plaintiff used the product in direct contravention of the product's warnings and instructions."  *Id.*

The Court finds that *Campbell Hausfeld* precludes Plaintiffs' contention that a misuse defense requires a wholly different use than the use intended.  Sgt. Litton was using the water heaters in precisely the way intended by the manufacturer, however, like in *Campbell Hausfeld*, summary judgment on a misuse defense is not absolutely precluded if the use was in contravention of a multitude of safety and use instructions.  That said, Defendants have failed to establish that the improper installation was as egregious as in *Campbell Hausfeld*, such that Defendants could

22

not have anticipated it. While Mr. Griffith opined that at least ten safety violations occurred, he counts each deviation from the instructions as a separate violation. A reasonable factfinder could conclude that Mr. Ramey's failure to follow the manual amounted only to two essential violations: (1) failure to convert from natural gas to propane gas fuel; and (2) failure to provide adequate ventilation. While the court in *Campbell Hausfeld* held that three violations amounted to an unforeseeable misuse as a matter of law, the Court cannot do so here and finds that there remains a question for the jury regarding whether these two violations together constitute misuse under Indiana law.

Moreover, in *Hackney v. Pendu Mfg., Inc.*, the Indiana Supreme Court stated that "the misuse statutory defense turned on 'whether Johnson's failure to follow the instructions was reasonably expected by [the defendant].'" 146 N.E.3d 1016, 1025 (Ind. Ct. App. 2020) (quoting *Campbell Hausfeld*, 109 N.E.3d at 959). Thus, the misuse defense rests on whether warnings provided to users and consumers were sufficient to render the failure to follow them unforeseeable by the manufacturer. The discussion above on the adequacy of the warnings regarding the necessity of and process for conversion from the default natural gas to propane gas is therefore fully applicable to the summary judgment determination on Defendants' proffered misuse defense, and the Court finds that there is a genuine issue of material fact on this defense. Accordingly, Defendants' Motion for Summary Judgment is **DENIED** as to the misuse defense.

### C.    Punitive Damages Claims

Plaintiffs have conceded that summary judgment is appropriate on their punitive damages claims. [Filing 137 at 28]. Consequently, the Court **GRANTS** Defendants' Motion for Summary Judgment as it relates to Plaintiffs' request for punitive damages.

**V.**

**MOTION TO EXCLUDE PLAINTIFFS' EXPERTS**

Subsequent to filing their Motion for Summary Judgment, Defendants filed a Motion to Exclude seeking exclusion of three purported expert witnesses from trial testimony as well as the reports produced by these experts.[4]  [Filing No. 149.]  Defendants seek to exclude the opinions of Dr. Miller, Bruce Jaffee, who produced an economic loss report, and Dr. Robert Gregori, who provided an opinion on Sgt. Litton's cause of death.  Defendants assert that all three experts should be excluded due to Plaintiffs' failure to comply with Federal Rule of Evidence 26,[5] because the opinions offered are not admissible under Rule 702, and because Dr. Gregori's opinions do not address any facts at issue in this case.  The Court addresses each expert in turn..

**A.      Dr. Miller**

First, Defendants seek to exclude Dr. Miller's expert report and testimony from trial.  The parties presented arguments supporting and opposing exclusion mirroring their arguments on the Defendants' objection to consideration of Dr. Miller's testimony with regard to summary judgement in addition to new arguments applicable only to the Motion to Exclude.  The Court's above discussion of repeated arguments is equally applicable to Defendants' Motion to Exclude and is incorporated here.  The Court will consider arguments presented in Motion to Exclude briefing below.

---

[4] Plaintiffs contend that Defendants committed a fatal procedural error with regard to their Motion to Exclude by failing to include a certificate of service in their filing as required by Fed. R. Civ. P. 5(d)(1).  [Filing No. 156 at 11–12.]  Defendants correctly respond that no such certificate is required when a filing is made electronically under Rule 5(d)(1)(B).  [Filing No. 158 at 9–10.]  Thus, the Court will not strike Defendants' Motion to Exclude based on omission of a certificate of service from the filing.

Defendants argue that Dr. Miller's opinion regarding the conspicuousness of the "fine print" on the ratings plate, similar to his opinion on Navien increasing the likelihood of error by only offering convertible water heaters, are inadmissible because it is contradicted by his own deposition testimony and is an inadmissible legal conclusion. [Filing No. 150 at 13–14.] Defendants also contend that Dr. Miller's opinion that Navien was "negligent" in their failure to follow ANSI standards is an inadmissible legal conclusion. [Filing No 150 at 14–15.]

Plaintiffs argue in response that Dr. Miller's opinions on the possibility of confusion is based on common sense and simple mathematics. [Filing No. 156 at 9–10.] Additionally, they contend that the data Dr. Miller relied upon is of a type commonly used by experts in this field and that any issues Defendants take with the data can be addressed through cross examination. [Filing No. 156 at 9–10.] They also argue that, to the degree that Dr. Miller's opinions are contradicted by his deposition testimony, such a conflict goes to his credibility rather than the admissibility of his expert opinions. [Filing No. 156 at 10.]

Defendants reply that expert opinions based on "common sense" are not admissible because an expert opinion based on common sense rather than scientific methodology is not of assistance to the jurors and provides no benefit towards them. [Filing No. 158 at 7.] The also argue that Dr. Miller's statements that Navien owes a "heightened duty" because they offer only convertible water heaters is inadmissible and contrary to Indiana law. [Filing No. 158 at 7–8.]

Initially, the Court notes that any alleged inconsistencies between Dr. Miller's report and his testimony does not result in the exclusion of his expert opinions. The Court's gate-keeping role under *Daubert* does not require it to make credibility determinations. So long as the Court finds that the witness is qualified, his opinions are based in established scientific methodology, and the

testimony would assist the jury, the Court cannot exclude the expert's opinions based on the potential for impeachment of the expert at trial.

While Dr. Miller does provide detail into his investigation of a Navien product, he does not explain how he came to the first of his three conclusions.  Conclusions based on "common sense" are not based on scientific methodology and not helpful to jurors as they themselves are presumed to possess and make factual assessments based on common sense.  As stated above, this conclusion does not meet the standard of Rule 702 and *Daubert*.  Conversely, Dr. Miller's remaining conclusions are well within expertise Dr. Miller possesses.  Dr. Miller's use of legal terminology including that Navien was "negligent" can properly be presented at trial as the expert's conclusion that the warnings were insufficient.

For the reasons addressed here as well as those stated above, the report does not comply with Federal Rule of Evidence 702, and the Defendants' Motion to Exclude Dr. Miller's report and testimony is **GRANTED IN PART** with regard to Dr. Miller's opinion related to increasing likelihood of confusion due to manufacturing only convertible water heater units, and **DENIED IN PART** with regard to all other opinions offered by Dr. Miller.

     **B.**    **Dr. Jaffee**

Defendants also seek exclusion of an Economic Loss Report produced by Dr. Bruce Jaffee and the opinions contained therein.  [Filing No. 150-8.]  Defendants argue that Plaintiffs did not timely provide the required disclosures under Federal Rule of Evidence 26(a)(2).  First, they contend that Plaintiffs failed to disclose the materials reviewed by Dr. Jaffee in the preparation of his report, with the exception of a "vague reference" to statements made by Plaintiffs and to W-2s.  [Filing No. 150 at 7.]  Defendants also argue that Plaintiffs testified at their depositions that they did not recall speaking with Dr. Jaffee and that no information regarding the W-2s' dates or sources

were disclosed to Defendants.  [Filing No. 150 at 7.]  Defendants further allege that Plaintiffs failed to timely disclose Dr. Jaffee's compensation statement, a list of cases he has testified in, and a statement of qualifications.  [Filing No. 150 at 4–5.]  They state that the Case Management Plan in this case required that these statements be provided by November 22, 2022 and that they did not receive Dr. Jaffee's *curriculum vitae* until that date (after receiving his report on October 17, 2022) and received Dr. Jaffee's fee schedule and list of cases he has testified in on December 15, 2022.

Plaintiffs respond that Dr. Jaffee included the information from the W-2 statements upon which he relied to reach the conclusions in his report and that he included ten attachments to his report reflecting further data he used to reach his conclusions.  [Filing No. 156 at 8.]  They state that any further discrepancies can be addressed in a deposition.  [Filing No. 156 at 8.]  Plaintiffs also concede that disclosures were made after the November 22, 2022 deadline, but argue that the errors were in good faith and that their supplementation was harmless because the reports and related disclosures are not relevant to summary judgment.  [Filing No. 156 at 6–7.]

Defendants argue in reply that Plaintiffs have conceded that the requirements of the rule were not filed and that their arguments merely attempt to minimize this violation. [Filing No. 158 at 4.]  They further argue that the disclosures remain incomplete because Dr. Jaffee did not list all information received in his report and the attachments to his report and general sources with no particularity to Sgt. Litton.  [Filing No. 158 at 5–6.]

Federal Rule of Civil Procedure 26(a)(2) requires parties intending to introduce witness testimony under Federal Rules of Evidence 702, 703, or 705 to disclose a written report "if the witness is one retained or specially employed to provide expert testimony."  The report must contain "the facts or data considered by the witness in forming them," "the witness's qualifications," and "a statement of the compensation to be paid for the study and testimony in the

case." Fed. R. Civ. P. 26(a)(2)(B)(ii).  "Failure to comply with the disclosure requirements of Rule 26(a) results in automatic and mandatory exclusion of the proffered witness 'unless the failure was substantially justified or is harmless.'"  *Novak v. Bd. of Trustees of S. Illinois Univ.*, 777 F.3d 966, 972 (7th Cir. 2015) (quoting Fed. R. Civ. P. 37(c)(1)).

The Court concludes that the requested sanction of exclusion is not necessary as the expert report in fact complies with required disclosures with regard to material reviewed.  Although Plaintiffs did not produce the actual W-2 forms themselves, the data reflected in the forms is included in the report.  There is no reason to believe there is extraneous data from the W-2s that was considered as part of Dr. Jaffee's analysis.  The W-2 statements themselves would be subject to discovery, and Dr. Jaffee is subject to deposition and cross examination with regard to the veracity of the facts.  Further, the fact that Plaintiffs did not recall at their depositions whether they spoke with Dr. Jaffee does not equate to a failure to disclose facts and data relied upon.  Dr. Jaffee would be subject to cross examination with regard to the source of the data and the facts originating from Plaintiffs.  Lastly, the Court finds that any late disclosure related to Dr. Jaffee's report is harmless.  Plaintiffs have provided, at this point, the required information to Defendants who now have the time and opportunity to use the disclosures for all relevant purposes.  Exclusion cannot be justified as a remedy when Defendants cannot demonstrate harm or prejudice from late disclosure.  For these reasons, Defendants' Motion to Exclude is **DENIED** as to Dr. Jaffee's expert report and testimony.

### C.    Dr. Gregori

Finally, Defendants seek to exclude a report from Dr. Robert Gregori, a physician who provided a report opining on the cause of Sgt. Litton's death.  [Filing No. 150-11.]  His conclusion, consistent with all other evidence, is that Sgt. Litton's death was caused by CO poisoning.

Defendants argue that, because they have conceded that CO poisoning caused Sgt. Litton's death, the opinions offered are not helpful to the jury because they do not address a fact in issue. [Filing No. 150 at 15.] Defendants also argue that Plaintiffs disclosures under 26(a)(2) similar to alleged deficiencies with regard to Dr. Jaffee in that some disclosures were belated and the materials used to support the opinions in the report also have not been turned over. [Filing No. 150 at 6.]

Plaintiffs respond that the cause of death is essential to their products liability claim and that they cannot prove causation without Dr. Gregori's expert report. [Filing No. 156 at 11.] They also argue that, similar to Dr. Jaffee's disclosures, any lateness of expert disclosures were in good faith and ultimately harmless, and the materials reviewed by Dr. Gregori were disclosed within the report itself. [Filing No. 156 at 6–8.]

Defendants reply that Dr. Gregori's expert opinion cannot reach the source of the CO poisoning, and therefore cannot prove the cause of Sgt. Litton's death. [Filing No. 158 at 8–9.] Although he can opine on the medical cause of Sgt. Litton's death, he cannot opine that it was the improperly installed water heaters that caused his death. [Filing No. 158 at 8–9.]

Like Dr. Jaffee's report, the Court declines to exclude Dr. Gregori's report based on procedural deficiencies in the disclosures. The Defendants possess the relevant materials, and no harm or prejudice can be found in any untimeliness in their receipt of the disclosures. Further, Dr. Gregori's report explains the materials reviewed and the information within them used to come to his conclusions. Therefore, the report itself demonstrates that the Plaintiff's complied with the required disclosure of material reviewed by their expert.

However, the Court finds that the cause of Sgt. Litton's death is a central element to Plaintiffs' claims. However, should Defendants agree to stipulate to the cause of Sgt. Litton's death, the opinions offered might then be unhelpful to the jury as unnecessary and would not

comply with Rule 702.  The Court therefore takes Defendants' Motion to Exclude Dr. Gregori's report pending a stipulation by parties on the cause of Sgt. Litton's death **UNDER ADVISEMENT**.

**V.**
**CONCLUSION**

For the foregoing reasons, the Court:

- **GRANTS IN PART** Defendants' Motion for Summary Judgment, [132], as it relates to Plaintiffs' claims for punitive damages and any claims relying solely on breach of warranty;

- **DENIES IN PART** Defendants' Motion for Summary Judgment, [132], as it relates to the adequacy of warnings and as it relates to Defendants' misuse defense;

- **GRANTS IN PART** Defendants' Motion to Exclude, [149], as it relates to the expert opinion and testimony of Dr. Miller regarding Navien increasing likelihood of error due to offering only convertible water heaters;

- **DENIES IN PART** Defendants' Motion to Exclude, [149], as it relates to the expert report and testimony of Dr. Jaffee and all remaining expert opinions offered by Dr. Miller; and

- **TAKES UNDER ADVISEMENT** Defendants' Motion to Exclude, [149], as it relates to the expert report and testimony of Dr. Gregori.

No partial final judgment shall enter at this time.

Plaintiffs' claims under the Indiana Products Liability Act remain for trial.  The Court requests that the Magistrate Judge confer with the parties as soon as practicable regarding resolving the remaining claims short of trial.

Date: 3/30/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**<u>Distribution via ECF only to all counsel of record</u>**